UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PATRICIA SABATINO,<br><br>                              Plaintiff,<br><br>       -against-<br><br>MERCY UNIVERSITY and BRETT CARROLL,<br><br>                       Defendants. | Civil Action No.:<br><br>**COMPLAINT**<br><br>Jury Trial Demanded |

Plaintiff, Patricia Sabatino ("Plaintiff" or "Ms. Sabatino"), by and through her attorneys, Valiant Law, hereby complains about Defendants Mercy University ("Mercy" or the "University") and Brett Carroll ("Carroll") (all defendants collectively referred to as the "Defendants"), and alleges, as follows:

## PRELIMINARY STATEMENT

1.      Ms. Sabatino, 70 years old, served Mercy faithfully since June 1, 2011, as Director of Purchasing at Mercy's Bronx location.

2.      Sadly, despite Ms. Sabatino's stellar record and devotion to her job, Mercy derailed her career at an advanced age, implemented a scheme of discrimination and retaliation based on her age and disabilities, and wrongfully terminated her employment – effectively forcing her into early retirement.

3.      These horrific acts started shortly after Carroll became Ms. Sabatino's direct manager.  Carroll, who is decades younger, suddenly and arbitrarily insisted Ms. Sabatino relocate to the University's Tarrytown offices, which sits atop a very steep hill and is not easily accessible.

4.      However, Carroll had full knowledge she could not access that location as she just sustained a broken knee, in addition to her previously existing disabilities/accommodations which prevented her from working in that location.

5.      Ms. Sabatino's requests, disabilities, and her need to remain working at the accessible Bronx Campus, as she had for the past 12 years without issue, were ignored. Instead, and without any interactive process, Mercy and Carroll arbitrarily required her to transfer to the Tarrytown location in a pretextual and retaliatory scheme to get rid of her.

6.      Toward this end, Carroll manufactured a plan to hide his discriminatory animus and effectuate the retaliatory termination of Ms. Sabatino's employment. Wanting a younger and more "able-bodied" employee, he systematically ignored Ms. Sabatino, hired his friend to issue a "consulting" report, and terminated Ms. Sabatino's employment under the guise he eliminated her position as "Director of Purchasing," in favor of a "new" position, "Director of Procurement," and because he needed someone in the Tarrytown location.

7.      Tellingly, these roles differ only in name, and Carroll never even considered Ms. Sabatino for this "new" role. Instead, Carroll hired a much younger, non-disabled individual to replace her, which alone constitutes prima facie discrimination. Moreover, the new "Director of Procurement" **(30 years younger than Ms. Sabatino and earning more)** does not work in the Tarrytown location, one of the pretextual job requirements placed upon Ms. Sabatino – and, upon information and belief, **Ms. Sabatino's former assistant remained working in the Bronx location as late as in or around September 2024.**

8.      Such overt discrimination is not only against the law, but violated Mercy's own "Policy and Procedures for Implementing Reasonable Accommodations for Employees," which claims that reasonable accommodations "may include, but are not limited to, modifying work schedules, granting breaks or providing leave, relocating the employee, reconfiguring workspaces or equipment…"

9.      Plaintiff complains pursuant to the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101 *et seq.* ("ADA"), the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 *et seq.* ("ADEA"), the Family Medical Leave Act of 1993, 29 U.S.C §§ 2601 *et seq.* ("FMLA"), the New York State Human Rights Law, NYS Executive Law §§ 296 *et seq*. ("NYSHRL"), the New York City Human Rights Law, New York City Administrative Code §§ 8-107 *et seq.* ("NYCHRL"), New York Labor Law ("NYLL"), among other laws as set forth below.

## PARTIES

10.      Plaintiff is an individual who, at all relevant times, resides in Bronx County, State of New York.

11.      Upon information and belief, Defendant Mercy University, is a private university with a principal place of business of 555 Broadway, Dobbs Ferry, NY 10522.

12.      Upon information and belief, Defendant Caroll is an individual residing within the State of New York. Moreover, at all times relevant, Caroll was the Chief Financial Officer of the University and had direct supervisory authority over Plaintiff.

13.      Upon information and belief, Carroll had the power to hire and fire employees, supervised and controlled employee schedules and conditions of employment, determined the rate and method of payment for relevant employees and/or employee salary bands or categories, including Plaintiff's, and maintained and/or managed employee records, including Plaintiff's.

14.      Upon information and belief, Defendants were an "employer" and/or "covered employer" as defined by all relevant statutes protecting human rights in the State of New York, including but not limited to ADA, ADEA, FMLA, NYSHRL, NYCHRL and the NYLL.

15.     At all relevant times, Plaintiff was an "employee" and/or "covered employee" of Defendants under all relevant statutes, protecting human rights in the State of New York including, but not limited to, the definitions of the term under the ADA, ADEA, FMLA, NYSHRL, NYCHRL and NYLL.

## JURISDICTION & VENUE

16.     The Court has jurisdiction over the subject matter of the action pursuant to 28 U.S.C. §§ 1331 and 1343 for Plaintiff's claims arising under the laws of the United States, and supplemental jurisdiction pursuant to 28 U.S.C. § 1367 for Plaintiff's claims arising under state and local laws.

17.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendants reside within the jurisdiction of this District and because a substantial part of the events and/or omissions giving rise to this action, occurred in this District.

## PREREQUISITES

18.     On or about September 4, 2024, Plaintiff filed a charge of disability discrimination and retaliation against Defendants Mercy University and Brett Carroll, with the Equal Employment Opportunity Commission ("EEOC").

19.     On or about November 4, 2024, Plaintiff received a Notice of Right to Sue from the EEOC.  Plaintiff filed this Complaint within 90 days of the EEOC's issuance of the Right to Sue under all relevant laws.

20.     A copy of this Complaint will be served upon the New York City Commission on Human Rights and the Corporation Counsel of the City of New York within ten days after its filing.

21.     Any and all other prerequisites to the filing of this suit have been met.

## STATEMENT OF FACTS

22.     Ms. Sabatino was employed by Mercy as a Director of Purchasing for over 12 years before she was unlawfully terminated. At no point in her long career did she face any disciplinary action, negative performance reviews, or writeups. In simple terms, she was a stellar employee who always performed her job duties satisfactorily.

23.     Mercy has three campuses and offers online programs for its students. Consequently, employees regularly work from home, and communicate via email, phone, and other electronic correspondence as employees are spread out across New York City and Westchester.

24.     During her entire 12-year tenure, Ms. Sabatino worked at the Bronx campus seamlessly with employees across multiple locations, including the campus located in Dobbs Ferry and offices located in Tarrytown.

25.     For most of her tenure, the Purchasing Department was under the purview of the Facilities and Operations Department. Ms. Sabatino reported to its Vice President, Tom Simmonds ("Simmonds"). At all times, Simmonds worked at the Dobbs campus, and Ms. Sabatino worked at the Bronx campus or remotely from her home. This arrangement never impeded either Ms. Sabatino's performance or the productivity of the Purchasing Department.

### *Sabatino Disclosed Her Disabilities and Requested Accommodations*

26.     Ms. Sabatino suffers from diabetic neuropathy, permanent night blindness, and complications from a fractured knee. As a result of these impairments, Ms. Sabatino cannot walk or drive long distances, cannot walk up or down steep, hilly terrain, and cannot travel between dusk and dawn.

27.    Thus, in November 2022, she contacted Mercy's Human Resources ("HR") department, who in turn advised Ms. Sabatino to complete an "ADA Medical Assessment Form" and submit it to The Hartford, Mercy's benefits administrator. Around late November and early December 2022, Ms. Sabatino and her doctors completed the required paperwork for Mercy and submitted the same to The Hartford.

28.    For her disabilities stemming from diabetic neuropathy and a fractured knee, one of Ms. Sabatino's medical providers completed the ADA Medical Assessment Form. The paperwork indicated Ms. Sabatino required workplace accommodations that would allow her to perform the essential functions of her job.

29.    In part, it stated, "[Ms. Sabatino] cannot travel long distances or walk long distances, staying on Bronx campus will allow her to work. Can't drive in dark – cannot walk up the hill."

30.    "The hill" refers to a large hill upon which Mercy's Tarrytown offices sit, which makes accessibility to the offices extremely difficult for disabled individuals, including Ms. Sabatino.

31.    Upon information and belief, the Tarrytown location fails to comply with federal, state and local disability, human rights and/or accessibility laws and codes, and Mercy is aware of such unlawful conditions.

32.    Ms. Sabatino could not traverse this hill due to her diabetic neuropathy and knee injuries. Further, Ms. Sabatino lives in the Bronx, which is very close to Mercy's Bronx campus. Driving to Dobbs Ferry or Tarrytown, however, posed serious risks, such as exacerbating her pain and injuries, and risks associated with the fact that she cannot see well enough to safely drive long distances when it is dark out.

33.    Indeed, Ms. Sabatino's permanent night blindness constitutes a disability for which she is entitled to reasonable accommodations. For these accommodations, she submitted to Mercy the ADA Medical Assessment Form from another provider who explained that Ms. Sabatino "cannot drive at dusk & night." For this condition, Ms. Sabatino required a modified work schedule during daytime hours and/or the ability to continue working from home, due to her inability to travel after dusk.

34.    However, it is without doubt that Ms. Sabatino was able to perform all the essential functions of her job with these accommodations—simply, to be permitted to keep working at the Bronx campus due to close proximity to her home, and lack of hilly terrain and/or at home occasionally, and accessibility to the Bronx location. Indeed, these accommodations simply preserved the status quo, as Ms. Sabatino had already been working at the Bronx location for the past 12 years.

35.    On January 18, 2023, Ms. Sabatino received notice that her reasonable accommodation requests were granted. Thus, she was permanently approved to work at the Bronx campus and during daytime hours, indefinitely.

36.    Simply, there can be no dispute that Mercy was on actual notice of these disabilities and her need for accommodations.

### Brett Caroll Became Ms. Sabatino's Supervisor

37.    In December 2022, Simmonds informed Ms. Sabatino that she would soon report to a new boss, Brett Carroll, Vice President of Finance and Chief Financial Officer, who worked out of the Westchester offices (Tarrytown).

38.    In late January 2023 (and after Ms. Sabatino's reasonable accommodation requests were approved by Mercy), Ms. Sabatino and Carroll spoke on the phone for the first time. After

making cordial introductions, Ms. Sabatino advised Carroll she was disabled and shared with him her approved accommodations, which included working at the Bronx campus and during daytime hours.

39.    Carroll quickly changed the subject, but it would soon be clear her disclosure resonated with him.

40.    In June 2023, Ms. Sabatino suddenly received an email which indicated that the Purchasing Department would now officially report to Carroll.

41.    Like clockwork, Carroll swiftly tried to force Ms. Sabatino to transfer to the Tarrytown offices, despite actual knowledge of her disability and required accommodations that were in place, and the fact she worked at the Bronx campus for more than a decade and thus could fully perform her job duties from that location.

42.    Ms. Sabatino again made it clear she would be physically unable to work at the Tarrytown offices and reiterated her needed accommodations. Yet Carroll tried to create an environment with impossible working conditions so she would be forced to leave the University. It would soon become clear such a demand was for no legitimate purpose other than to harass and subject her to a hostile work environment in hopes that she would "retire."

43.    As Carroll was unrelenting, and in fear of her losing her job, on or around June 16, 2023, Ms. Sabatino called HR to express her concerns about Carroll's discriminatory demands.

44.    Offering no help, HR confirmed her accommodations, but directed Ms. Sabatino to discuss the issues with Carroll – the very individual who was harassing Ms. Sabatino and attempting to undermine her protected accommodations.

45.    Without any other avenue to pursue her concerns and accommodations, Ms. Sabatino made requests to Carroll for a meeting to discuss these issues.  Around July 6, 2023, Carroll finally met with Ms. Sabatino.

46.    While the meeting was seemingly cordial, Carroll made clear his disdain for Ms. Sabatino's health issues and already approved accommodations – in the eyes of Carroll, these were impediments which prevented him from running the department based on his discriminatory preferences without any regard for the law.

47.    He stressed things would be "different" for Ms. Sabatino under his leadership, threatening that changes were coming, a clear and immediate adverse employment action reiterating the inferior terms and conditions of employment he forced upon her. Indeed, Carroll did not speak with other younger, more able-bodied employees in this threatening and cagey manner.

***Ms. Sabatino Reaggravated Her Knee Injury and Renewed Her Accommodation Request***

48.    Unfortunately, on or around July 23, 2023, Ms. Sabatino fell and reinjured her knee, breaking a bone.

49.    The next day, July 24th, she called Carroll to inform him of her new injury and requested to work remotely until her next follow-up appointment with her healthcare provider. This was a new request for a reasonable accommodation based on a new injury.

50.    Although Carroll did initially approve this request, Ms. Sabatino would eventually come to learn the approval was a façade, as Carroll's discriminatory scheme to fire her was already set in motion and would soon come to fruition.

51.    On or around August 8, 2023, Ms. Sabatino saw her orthopedist who advised Ms. Sabatino to keep her knee in a brace for approximately six (6) weeks and then attend physical

therapy thereafter. Upon information and belief, Ms. Sabatino used paid sick leave to cover the time she was seeing her orthopedist.

52.     During this time, she would need to continue working from home, being unable to drive or walk.

53.     To remove all doubt, Ms. Sabatino was permitted to work from home from time to time prior to this injury and could perform all essential functions of her job working remotely. Ms. Sabatino sent Carroll a message via Microsoft Teams ("Teams") advising same. Carroll ignored her.

### *Carroll Ignored Ms. Sabatino as She Kept Him Informed of Her Condition*

54.     Two weeks later, Carroll finally called Ms. Sabatino and inquired when she would return to the office. Ms. Sabatino reminded him again she was in a brace for at least four more weeks, and then needed to attend physical therapy. She also stated she would continue to keep him up to date on her progress, as she was excited to return to work, and life, as usual.

55.     Ms. Sabatino visited the orthopedist on or around August 29th and September 26th. Her provider advised her to keep working from home. Ms. Sabatino routinely updated Carroll on her progress, many times in writing through Teams, but Carroll intentionally ignored her.

56.     Then, suddenly around November 1, 2023, Carroll emailed Ms. Sabatino (in complete disregard of the interactive process) a copy of a report allegedly commissioned to "improve" the Purchasing Department. The report was completed by a third-party consultant, Lisa Condon.

57.     In reality, the report was authored by a friend of Carroll who he hired as a "consultant," and was ripe with missing and/or inaccurate information. Unbeknownst to Ms.

Sabatino at the time, this report was a tool to be used to help Carroll effectuate the pretextual termination of her employment.

58.     On November 7, 2023, Ms. Sabatino visited her orthopedist again. It was noted she was making good progress on her recovery and expected to be able to return to work in person later that month. Ms. Sabatino excitedly informed Carroll of the same. Again, Carroll ignored her.

### *The Pretextual Termination of Ms. Sabatino's Employment*

59.     On November 14, 2023, Ms. Sabatino received a Zoom invitation from Carroll to meet later that week. On November 17, 2023, Ms. Sabatino, Carroll, and Madeline Martinez ("Martinez"), Executive Director of HR, met on Zoom.

60.     Carroll informed Ms. Sabatino her employment was terminated effective immediately. Carroll confusingly claimed the reason was that he wanted a "Director of Procurement," rather than a "Director of Purchasing," which was Ms. Sabatino's title.

61.     Ms. Sabatino pointed out the two positions differed in name only and pressed Carroll to explain why she was not even considered for this new role in light of her 12 years of successful service at Mercy, and more than four decades of experience in "purchasing" and "procurement." Carroll provided no explanation of his failure to consider Ms. Sabatino for the new role.

62.     Suddenly, Carroll made his discriminatory animus crystal clear when he acknowledged there was no actual difference in the role and admitted he fired her because he "wanted" her to move to the Tarrytown offices and out of the Bronx.

63.     With full knowledge of Ms. Sabatino's disabilities, and that she could fully perform her job duties from the Bronx and/or remotely, Carroll unlawfully replaced her with a younger (by

30 years), non-disabled individual under the guise of eliminating Ms. Sabatino's position (while failing to even interview her for the "new" position).

64.     However, such pretext will not shield Mercy from liability for its clearly unlawful preference for younger, and more "abled bodied" employees. To be clear, Ms. Sabatino was able to perform the essential functions of her job – and exceptionally well – with her accommodations. Mercy never even provided a remotely legitimate business reason for firing her or trying to force her to move from the Bronx.

65.     Furthermore, upon information and belief, members of the Purchasing Department were still working at the Bronx location as late as in or around September 2024.

66.     Furthermore, Ms. Sabatino had been a full-time employee at Mercy, a covered employer under the FMLA, for over 12 years. Accordingly, she was clearly eligible to take FMLA leave at the time of her termination. Despite her eligibility, Defendants failed to offer her the option to take FMLA leave before terminating her employment based on her disabilities.

67.     In the end, and while these are just some of the examples of the discrimination, harassment and retaliation Plaintiff endured, Defendants' actions were intended to, and did, create a hostile work environment, replete with discrimination, retaliation and disparate treatment that no reasonable person should or would tolerate.

68.     As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

69.     Such overt discrimination is not only against the law, but violated Mercy's own "Policy and Procedures for Implementing Reasonable Accommodations for Employees," which claims:

> Mercy University is committed to providing reasonable accommodations to allow qualified individuals the opportunity to participate in employment at the University. Requests for accommodation require a formal process with…the opportunity for an appeal.
>
> \*       \*       \*
>
> [Mercy] will engage in an interactive process, which may involve a consideration of a number of factors, such as the employee's limitations and the job requirements, essential duties, and office size and structure, with the goal of finding an acceptable accommodation. Reasonable accommodations may include, but are not limited to, *modifying work schedules, granting breaks or providing leave, relocating the employee, reconfiguring workspaces or equipment*…
>
> \*       \*       \*
>
> It is against federal and state law to punish an employee for asserting their rights to request an accommodation for a disability, pregnancy, childbirth or related medical condition, or religious practice. (Emphasis added).

70.     As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

71.     As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands punitive damages.

**AS A FIRST CAUSE OF ACTION AGAINST DEFENDANT MERCY**
**DISCRIMINATION IN VIOLATION OF THE ADA**

72.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

73.    42 U.S.C. § 12112 makes it unlawful for an employer to "discriminate against a qualified individual on the basis of disability in regard to … advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." (42 U.S.C. §12112(a)).

74.    Further, the ADA defines discrimination against a qualified individual as not making reasonable accommodations to the known physical limitations of an otherwise qualified individual with a disability who is an employee. (42 U.S.C. §12112(b)(5)(A)).

75.    At all relevant times, Defendant Mercy University was a covered employer under the ADA and participated in the discriminatory and unlawful conduct alleged herein.

76.    At all relevant times, Plaintiff was a qualified employee, under the meaning of the ADA, and could have provided her job functions with reasonable accommodations.

77.    Defendant violated the sections cited herein by creating and maintaining discriminatory working conditions, a hostile work environment, failing to provide reasonable accommodations and engage in an interactive process, and otherwise discriminating and engaging in disparate treatment against Plaintiff, because of Plaintiff's disability. Plaintiff suffered conduct that was objectively severe and/or pervasive, created an environment which Plaintiff perceived as hostile and/or abusive and created such environment because of Plaintiff's disability.

**AS A SECOND CAUSE OF ACTION AGAINST DEFENDANT MERCY**
**RETALIATION IN VIOLATION OF THE ADA**

78.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

79.    42 U.S.C. § 12203 prohibits an employer from discriminating, which includes retaliation, against an individual because such individual has opposed any act or practice made unlawful under the ADA (§ 12203(a)).

80.    Defendant Mercy violated this section by retaliating against Plaintiff because of her conduct opposing Defendants' violations of the ADA

### AS A THIRD CAUSE OF ACTION AGAINST ALL DEFENDANTS
### DISCRIMINATION IN VIOLATION OF THE ADEA

81.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

82.    The ADEA makes it unlawful for an employer to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to her compensation, terms, conditions, or privileges of employment, because of such individual's age. (29 U.S.C. § 623(a).)

83.    At all relevant times the ADEA was in effect and binding on Defendants, Plaintiff was within the protected age group as she is over 40 years old, and Plaintiff was qualified for the position she held with Defendants.

84.    Defendants violated the section cited herein by discriminating against Plaintiff because of her age and taking adverse employment actions against Plaintiff.

### AS A FOURTH CAUSE OF ACTION AGAINST ALL DEFENDANTS
### FMLA INTERFERENCE

85.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

86.    At all times relevant, Plaintiff was an eligible employee under the FMLA and was qualified and entitled to take leave under the FMLA, as she was experiencing her own serious

health conditions that required continuing treatment by a healthcare provider, such as diabetic neuropathy, permanent night blindness, and complications from a fractured knee.

87.    By the actions described above, Defendants unlawfully interfered with Plaintiff's FMLA rights. Plaintiff gave proper notice of her intent to utilize, and was entitled to, FMLA protections, and Defendants thwarted, denied, and prevented Plaintiff from obtaining benefits.

88.    As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer monetary and/or economic harm for which she is entitled to an award of damages, in addition to reasonable attorneys' fee and costs.

89.    Defendants were well-aware of the fact Plaintiff's health conditions rendered her qualified for FMLA. Defendants also knew and/or perceived Plaintiff to be disabled and eligible for FMLA.

90.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which she is entitled to an award of monetary damages and other relief.

91.    Defendants' unlawful actions constitute reckless, intentional, malicious, willful, and want violations of the FMLA.

### AS A FIFTH CAUSE OF ACTION AGAINST ALL DEFENDANTS
### DISCRIMINATION UNDER THE NYSHRL

92.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

93.    New York State Executive Law § 296 provides:

> "It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's *age*, race, creed,

color, national origin, citizenship or immigration status, sexual orientation, gender identity or expression, military status, sex, *disability*, predisposing genetic characteristics, familial status, marital status or status as a victim of domestic violence, of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment." (Emphasis added).

94.     Further, New York State Executive Law § 296 prohibits an employer from denying reasonable accommodations, including permission to keep working at the Bronx campus due to close proximity to her home, and its lack of hilly terrain and/or permission to work from home occasionally.

95.     Defendants violated the section cited herein by creating and maintaining discriminatory working conditions, a hostile work environment, failing to engage in the interactive process, failing to accommodate, and otherwise discriminating against Plaintiff and subjecting her to disparate treatment because of her disability and/or perceived disability and age.

96.     At all relevant times, Plaintiff was qualified to perform the essential functions of her job, was entitled to reasonable accommodations, and could have performed her essential job duties with reasonable accommodations.

97.     Nonetheless, Defendants—without any interactive process—arbitrarily required Plaintiff to transfer to the Tarrytown location, which sits atop a very steep hill and is not easily accessible.

98.     As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm, and severe mental anguish and emotional distress, for which she is entitled to an award of monetary damages, in addition to attorneys' fees and costs, and other relief, to the greatest extent permitted under law.

**AS A SIXTH CAUSE OF ACTION AGAINST ALL DEFENDANTS**
**RETALIATION UNDER THE NYSHRL**

99.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

100.    New York State Executive Law § 296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because she has opposed any practices forbidden under this article."

101.    In response to Plaintiff's requests for accommodation and complaints, Defendants subjected Plaintiff to numerous adverse employment actions as alleged herein, including, but not limited to, subjecting Plaintiff to a hostile work environment, threatened job loss, an unwarranted and pretextual investigation, placing her on an unpaid suspension, and ultimately wrongfully terminating her employment.

102.    As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm, and severe mental anguish and emotional distress, for which she is entitled to an award of monetary damages, in addition to attorneys' fees and costs, and other relief, to the greatest extent permitted under law.

**AS A SEVENTH CAUSE OF ACTION AGAINST ALL DEFENDANTS**
**AIDING AND ABETTING DISCRIMINATION UNDER THE NYSHRL**

103.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

104.    New York State Executive Law § 296(6) provides that it shall be an unlawful discriminatory practice: "For any person to aid, abet, incite compel or coerce the doing of any acts forbidden under this article, or attempt to do so."

105.    New York State Executive Law § 292(a) defines "person" to include "one or more individuals, partnerships, associations, corporations, legal representatives, trustees, trustees in bankruptcy, or receivers."

106.    Defendants participated in, condoned, encouraged, and approved the conduct giving rise to the unlawful conduct alleged herein, including but not limited to, discrimination, harassment, and retaliation.

107.    Defendants violated the section cited herein as set forth.

## AS AN EIGHTH CAUSE OF ACTION AGAINST ALL DEFENDANTS
## DISCRIMINATION IN VIOLATION OF THE NYCHRL

108.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

109.    The New York City Administrative Code § 8-107(1) provides that:

> "it shall be an unlawful discriminatory practice: (a) for an employer or an employee or agent thereof, because of the actual or perceived *age*, race, creed, color, national origin, gender, *disability*, marital status, partnership status, caregiver status, sexual and reproductive health decisions, sexual orientation, uniformed service or immigration or citizenship status…of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment." (Emphasis added).

110.    At all relevant times, Plaintiff was qualified to perform the essential functions of her job, was entitled to reasonable accommodations, and could have performed her essential job duties with reasonable accommodations.

111.    Nonetheless, Defendants—without any interactive process or cooperative dialogue—arbitrarily required Plaintiff to transfer to the Tarrytown location, which sits atop a very steep hill and is not easily accessible.

112.    Defendants engaged in an unlawful discriminatory practice in violation of the New York City Administrative Code § 8-107(1)(a) by creating and maintaining discriminatory working conditions, harassment, and otherwise discriminating against the Plaintiff and creating a hostile work environment, subjecting plaintiff to inferior terms, conditions, and privileges of employment, and engaging in disparate treatment against Plaintiff because of her actual or perceived disabilities and age.

**AS A NINTH CAUSE OF ACTION AGAINST ALL DEFENDANTS
RETALIATION IN VIOLATION OF THE NYCHRL**

113.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

114.    The New York City Administrative Code § 8-107(7) provides that it shall be unlawful discriminatory practice: "For an employer … to discharge … or otherwise discriminate against any person because such person has opposed any practices forbidden under this chapter…"

115.    Defendants violated this section by retaliating against Plaintiff for her protected activities as set forth above, including but not limited to, making requests for reasonable accommodations and complaining of Defendant Carroll's discriminatory treatment.

**AS A TENTH CAUSE OF ACTION AGAINST ALL DEFENDANTS
REFUSING TO ENGAGE IN COOPERATIVE DIALOGUE IN
VIOLATION OF THE NYCHRL**

116.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

117.    Defendants were obligated to engage in a cooperative dialogue with Plaintiff related to her need for accommodation under the New York City Human Rights Law.

118.    The aforementioned acts of Defendants constitute a violation of § 8-107(28)(a)(2) of the New York City Human Rights Law, which provides, *inter alia* that:

It shall be an unlawful discriminatory practice for an employer, labor organization or employment agency or an employee or agent thereof to refuse or otherwise fail to engage in a cooperative dialogue within a reasonable time with a person who has requested

an accommodation or who the covered entity has notice may require such an accommodation.

119.    Section 8-107(28)(d) required Defendants, "[u]pon reaching a final determination at the conclusion of a cooperative dialogue," to provide Plaintiff with "a written final determination identifying any accommodation granted or denied," yet Defendants failed to do so.

120.    Defendants violated these sections by failing to engage in a cooperative dialogue, failing to accommodate and failing to provide a written determination to Plaintiff.

## AS AN ELEVENTH CAUSE OF ACTION AGAINST ALL DEFENDANTS AIDING AND ABETTING DISCRIMINATION IN VIOLATION OF THE NYCHRL

121.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

122.    New York City Administrative Code Title § 8-107(6) provides that "It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter, or to attempt to do so."

123.    Defendants participated in, condoned, encouraged, and approved the conduct giving rise to the unlawful conduct alleged herein, including but not limited to, discrimination, harassment, and retaliation.

124.    Defendants violated the section cited herein as set forth.

## AS A TWELFTH CAUSE OF ACTION AGAINST ALL DEFENDANTS RETALIATION IN VIOLATION OF NYLL § 215

125.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

126.    NYLL § 215(1)(a) provides, in pertinent part:

> No employer or his or her agent, or the officer or agent of any corporation, partnership, or limited liability company, or any other person, shall discharge, threaten, penalize, or in any other manner discriminate or retaliate against any employee (i) because such employee has made a complaint…that the employer has engaged in conduct that the employee, reasonably and in good faith, believes violates any provision of this chapter…or (viii) **because such employee has used any legally protected absence pursuant to federal, local, or state law**. (Emphasis added).

127.    As set forth herein, Plaintiff made several complaints of Defendant Carroll's intent to transfer Plaintiff to Mercy's Tarrytown office, which was inaccessible to employees with disabilities, and therefore unsafe for her to work.

128.    These were complaints which Plaintiff reasonably and in good faith believed violated NYLL § 200, which imposes a non-delegable duty on employers to protect the health and safety of employees and mandates: "All places to which this chapter applies shall be so constructed, equipped, arranged, operated and conducted as to provide reasonable and adequate protection to the lives, health and safety of all persons employed therein or lawfully frequenting such places."

129.    Accordingly, the Tarrytown location was inaccessible for employees with disabilities such that it created a risk to their health and safety, in violation of NYLL § 200.

130.    Additionally, Plaintiff used paid sick leave, as protected by NYLL §196-b, in or around August 2023. Plaintiff used her paid sick leave to seek medical treatment for her reaggravated knee injury.

131.    Defendants retaliated against Plaintiff due to her protected activities, which culminated in the wrongful termination of her employment. Accordingly, Defendants have violated this section of the NYLL.

132.    Further, Defendants retaliated against Plaintiff for using and/or attempting to use legally protected absences pursuant to federal, local, and/or state law.

133.    As such, Plaintiff is entitled to all appropriate relief, including but not limited to, lost compensation, back pay, front pay, liquidated damages, compensatory damages, pain and suffering, costs and attorneys' fees.

## AS A THIRTEENTH CAUSE OF ACTION AGAINST ALL DEFENDANTS RETALIATION IN VIOLATION OF NYLL § 740

134.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

135.    NYLL § 740(2)(a) prohibits an employer from taking any retaliatory action against an employee, because such employee discloses or threatens to disclose to a supervisor a practice of the employer that the employee reasonably believes is in violation of law, rule or regulation.

136.    Plaintiff reasonably believed Defendants actions, policies, and/or practices were violations of the law, rule and/or regulations.

137.    Plaintiff disclosed such actions and practices to her supervisors, Defendants. For example, Plaintiff complained of Defendants' arbitrary rejection of her requests for reasonable accommodation, without engaging in an interactive dialogue, and Carroll's discriminatory treatment of Plaintiff.

138.    Defendants violated the section cited herein by retaliating against Plaintiff for her complaints of Defendant's conduct which Plaintiff reasonably believed violated New York State Laws, Federal Laws, and regulations.

## JURY DEMAND

139.    Plaintiff requests a jury trial on all issues to be tried.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests a judgment against Defendants as follows:

A.     Declaring that the Defendants engaged in unlawful employment practices prohibited by the ADA, ADEA, FMLA, NYSHRL, NYCHRL, and NYLL, in that Defendants harassed, discriminated, and retaliated against Plaintiff on the basis of her disability and/or perceived disability and age.

B.     An injunction and order permanently restraining Defendants from engaging in such unlawful conduct;

C.     Awarding damages to the Plaintiff for any lost wages and benefits, past and future, back pay and front pay, and interest, resulting from Defendants' unlawful acts and employment practices;

D.     Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to reputation in an amount to be determined at trial;

E.     Awarding Plaintiff all damages sustained as a direct and proximate result of Defendants' unlawful conduct alleged herein;

F.     Awarding Plaintiff civil penalties and liquidated damages.

G.     Awarding Plaintiff punitive damages;

H.     Awarding Plaintiff all interest, attorney's fees, costs, disbursements and expenses incurred in the prosecution of the action; and

I.     Awarding Plaintiff such other and further relief as the Court may deem equitable. just and proper.

Dated**:**  November 11, 2024
       White Plains, New York

               Yours, etc.

               VALIANT LAW

               By:    */s/ Joseph Jeziorkowski*
                    Joseph Jeziorkowski, Esq.
                    William Knight, Esq.
               *Attorneys for Plaintiff*
               *Patricia Sabatino*
               2 Westchester Park Dr., Suite 205
               White Plains, New York 10604
               914-730-2422
               jjj@valiantlaw.com
               wfk@valiantlaw.com